# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN<br><br>    Plaintiffs,<br><br>    v.<br><br>COMPACT INFORMATION SYSTEMS, LLC, ACCUDATA INTEGRATED MARKETING, INC., ALUMNIFINDER, ASL MARKETING, INC., COLLEGE BOUND SELECTION SERVICE, DEEPSYNC LABS, HOMEDATA, STUDENT RESEARCH GROUP, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*<br><br>    Defendants. | Civil Action No. 1:24-cv-08451 |

# DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

Defendants Compact Information Systems, LLC, Accudata Integrated Marketing, Inc., Alumnifinder, ASL Marketing, Inc., College Bound Selection Service, Deepsync Labs, Homedata, and Student Research Group, (collectively, "Defendants"), by and through its undersigned counsel, respectfully file this Answer to the Complaint of Plaintiff Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev and William Sullivan (collectively, "Plaintiffs") as follows:

Defendants deny all allegations in the Complaint except to the extent expressly admitted herein. Because the headings, footnotes, and exhibits in and attached to the Complaint are not allegations, Defendants do not respond to them. To the extent a response to the headings, footnotes, and exhibits is necessary, Defendants deny the allegations contained in any headings, footnotes, and exhibits.

Defendants responses herein are made upon information and belief and may change subject to further investigation. Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint.

## INTRODUCTION

1.    In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with

the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 1 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

2.    This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 2 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

3.    The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement

officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 3 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

4.    With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

**ANSWER:** Paragraph 4 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.    In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in

college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 5 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

6.      During the investigation, the perpetrator was found to have certain political personal grievances against the Judge, and went to their home that day intending to kill Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 6 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

7.      Critically, the gunman was able to find the home addresses of both of

his murder victims through the various people finder resources available on the internet, the same kind of data broker services at issue in this case.

**ANSWER:** Paragraph 7 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

### New Jersey Passes Daniel's Law in 2020

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 8 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or

unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 9 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 10 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 11 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached, and it was signed by President Biden.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 12 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

## Violence Against Police Offers and Judges Has Not Stopped

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 13 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling. The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 14 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.

Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

**ANSWER:** In response to Paragraph 15 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Jane Doe-1. Defendants deny the remaining allegations.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current

duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

**ANSWER:** In response to Paragraph 16 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Jane Doe-2. Defendants deny the remaining allegations.

17.    Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009,

because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

**ANSWER:** In response to Paragraph 17 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Edwin Maldonado. Defendants deny the remaining allegations.

18    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's

audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

**ANSWER:** In response to Paragraph 18 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiffs Scott Maloney and Justyna Maloney. Defendants deny the remaining allegations.

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

**ANSWER:** In response to Paragraph 19 of the Complaint, Defendants lack

information sufficient to answer the allegations related to Plaintiffs Scott Maloney and Justyna Maloney. Defendants deny the remaining allegations.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

**ANSWER:** In response to Paragraph 20 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiffs Scott Maloney and Justyna Maloney. Defendants deny the remaining allegations.

21.     Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.

Officer Maloney and her two young children were at home at the time.

**ANSWER:** In response to Paragraph 21 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiffs Scott Maloney and Justyna Maloney. Defendants deny the remaining allegations.

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**ANSWER:** In response to Paragraph 22 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Patrick Colligan. Defendants deny the remaining allegations.

23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers

throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**ANSWER:** In response to Paragraph 23 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Peter Andreyev. Defendants deny the remaining allegations.

24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion

and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**ANSWER:** In response to Paragraph 24 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff William Sullivan. Defendants deny the remaining allegations.

### **Plaintiff Atlas and its Assignors**

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

**ANSWER:** In response to Paragraph 25 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,848 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

**ANSWER:** Paragraph 26 of the Complaint is a statement of Plaintiffs'

position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

**ANSWER:** Paragraph 27 of the Complaint is a statement of Plaintiff's' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

**ANSWER:** Paragraph 28 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

29.    Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected

information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

**ANSWER:** Paragraph 29 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

**ANSWER:** Paragraph 30 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

**ANSWER:** In response to Paragraph 31 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as Covered Person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

**ANSWER:** In response to Paragraph 32 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

33.    AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

**ANSWER:** In response to Paragraph 33 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

34.    Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of

Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

**ANSWER:** In response to Paragraph 34 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

**ANSWER:** In response to Paragraph 35 of the Complaint, Defendants lack information sufficient to answer the allegations related to Plaintiff Atlas Data Privacy Corporation.

36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law

for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**ANSWER:** Paragraph 36 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

### **Defendants**

37.    Defendant Compact Information Systems, LLC, is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 37 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant Compact Information Systems, LLC denies the allegations.

38.    Defendant AccuData Integrated Marketing, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 38 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant AccuData Integrated Marketing, Inc. denies the allegations.

39.     Defendant AlumniFinder is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 39 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant AlumniFinder denies the allegations.

40.     Defendant ASL Marketing, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 40 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant ASL Marketing, Inc. denies the allegations.

41.     Defendant College Bound Selection Service is an entity that discloses or discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 41 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, College Bound Selection Service denies the allegations.

42.     Defendant DeepSync Labs is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished

home telephone numbers of covered persons.

**ANSWER:** Paragraph 42 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, DeepSync Labs denies the allegations.

43.    Defendant HomeData is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 43 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, HomeData denies the allegations.

44.    Defendant Student Research Group is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER:** Paragraph 44 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Student Research Group denies the allegations.

45.    Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due

to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

**ANSWER:** Paragraph 45 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants Richard Roes 1-10 and ABC Companies 1-10 deny the allegations.

46.    Defendants offer and engage in the disclosure of data and information through one or more websites, applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. Those websites include:

accudata.com

alumnifinder.com

aslmarketing.com

cbssearch.net

deepsync.com

homedata.com

studentresearchgroup.com

**ANSWER:** In response to Paragraph 46 of the Complaint, Defendants admit the allegations.

47.    In accordance with Defendants' business model, visitors, users, or

customers may obtain a name and home address and/or a name and unpublished

home telephone number (including the name and address and/or unpublished home

telephone number of the Individual Plaintiffs and Covered Persons).

**ANSWER:** Paragraph 47 of the Complaint contains legal conclusions to

which no answer is required. To the extent an answer is required, Defendants deny

the allegations.

48.    Daniel's Law was passed to protect those who serve from the disclosure

of this protected information by such services, which disclose such information of

the Individual Plaintiffs and Covered Persons for their own commercial interests,

without sufficient regard to the risks and consequences imposed on individuals.

**ANSWER:** There are no factual allegations directed at Defendants in

Paragraph 48 to admit or deny. To the extent any allegations are directed at

Defendants, they are denied.

## JURISDICTION AND VENUE

49.    This Court has jurisdiction because the parties reside and/or conduct

business in New Jersey, along with the Covered Persons, and the unlawful actions

complained of herein occurred in New Jersey.

**ANSWER:** Paragraph 49 of the Complaint contains legal conclusions to

which no answer is required. To the extent an answer is required, Defendants deny

the allegations.

50.    Venue is proper pursuant to R. 4:3-2, in that Monmouth County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

**ANSWER:** Paragraph 50 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

### FACTS COMMON TO ALL COUNTS

51.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 51 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

52.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 52 to admit or deny. To the extent any allegations are directed at

Defendants, they are denied.

53.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 53 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

54.    This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 54 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

55.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the

Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 55 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

56.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 56 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

57.    As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> > (1) actual damages, but not less than liquidated

damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 57 to admit or deny. To the extent any allegations are directed at Defendants, they are denied.

58.    Starting on or about January 3, 2024 each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

**ANSWER:** Paragraph 58 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny

the allegations.

59.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

**ANSWER:** Paragraph 59 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

60.    Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

**ANSWER:** Paragraph 60 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

61.    Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

**ANSWER:** Paragraph 61 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

62.   All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

**ANSWER:** Paragraph 62 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

63.   The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**ANSWER:** Paragraph 63 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

## COUNT ONE

### (Daniel's Law)

64.   The allegations of the Complaint set forth above are included herein as if set forth at length.

**ANSWER:** In response to Paragraph 64, Defendants incorporate by reference its Answers to Paragraphs 1-63 hereto.

65.   The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home

address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

**ANSWER:** Paragraph 65 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

66.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

**ANSWER:** Paragraph 66 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

67.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

**ANSWER:** Paragraph 67 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

68.    Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law,

and their failure in doing so each constitute a separate violation under the law.

**ANSWER:** Paragraph 68 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

69. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

**ANSWER:** Paragraph 69 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

70. As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

**ANSWER:** Paragraph 70 of the Complaint is a statement of Plaintiffs' position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and

cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

**ANSWER:** Defendants deny that Plaintiffs are entitled to any of the relief requested and denies every allegation not expressly admitted.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses, without assuming the burden of proof on such defenses that would otherwise fall on Plaintiffs. Defendants reserve the right to supplement or amend these defenses as discovery is conducted, and does not knowingly or intentionally waive any applicable affirmative defense.

### First Affirmative Defense

Plaintiffs fail to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of intervening and/or superseding causation because any alleged injuries or damages they claim were caused by third parties who are not employees or agents of Defendants.

### Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the acts, omissions, conduct, damages, loss, and/or injuries complained of were proximately caused by persons or entities other than Defendants.

### Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because any alleged damages, injuries, or loss were caused and brought about by a prior or subsequent intervening and superseding cause for which Defendants had no responsibility or control over, by an unavoidable accident, by an act of God, or otherwise were substantially brought about by a cause or party not under the control of Defendants and therefore, Defendants are without fault.

## Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole in part, because they have not suffered any injuries or incurred any damages.

## Seventh Affirmative Defense

If Plaintiffs have been injured or damaged, any damage, loss, or liability sustained by Plaintiff or the putative class members must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants under the principles of equitable allocation, recoupment, set-off, proportionate, responsibility, and comparative fault.

## Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver, estoppel, release, consent, and/or unclean hands.

## Ninth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the failure to join one or more indispensable parties.

### Tenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of election of remedies.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Defendants did not breach any alleged contractual, statutory, regulatory, common law, or any other alleged duty owed to Plaintiffs.

### Twelfth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Defendants complied with all applicable laws, regulations, rules, and statutes.

### Thirteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Defendants did not act with intent to invade Plaintiffs' alleged privacy.

### Fourteenth Affirmative Defense

The Complaint fails to state sufficient facts to constitute a claim for recovery of attorneys' fees.

### Fifteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## Sixteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## Seventeenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the statutory damages provision of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provision violates the United States Constitution.

## Eighteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the Communications Decency Act (42 U.S.C. 230, § *et seq*.).

## Nineteenth Affirmative Defense

Plaintiffs' claims for injunctive relief are barred, in whole or in part, because there is neither continuing harm nor immediate danger to Plaintiffs.

## Twentieth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by public policy.

## Twenty First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they failed to provide statutory notice for the alleged requests.

## Twenty Second Affirmative Defense

Defendants plead any and all affirmative defenses contained in the Federal Rules of Civil Procedure which are supported by the facts, whether known or unknown at this time, as a complete or partial bar to the claims of Plaintiffs.

## Twenty Third Affirmative Defense

Defendants hereby reserve and assert all affirmative and other defenses available under any applicable federal or state law. Defendants presently have insufficient knowledge or information upon which to form a belief as to whether it may have other, as yet unstated, affirmative defenses available. Defendants assert the foregoing Affirmative Defenses without the benefit of discovery from Plaintiffs. Defendants therefore reserve the right to amend or supplement its Affirmative Defenses to the extent any additional defenses become available or apparent during the course of discovery and at any time, including up to and at trial.

## PRAYER FOR RELIEF

Defendants  pray for relief as follows:

40016945.1:12373-0012

1.    For dismissal of Plaintiffs' Complaint with prejudice and judgment entered in favor of Defendants;

2.    That Defendants be awarded its costs of suit, including reasonable attorneys' fees;

3.    For one hundred percent of any liability, responsibility, and/or fault for the injuries, losses, damages, if any, of Plaintiffs be apportioned to them and/or one or more third parties not before the Court;

4.    For a trial by jury on all issues so triable; and

5.    For such further and other relief as the Court deems fair and just.

DATED:  October 3, 2025

**WOOD, SMITH, HENNING & BERMAN LLP**

*s/ Jared K. Levy*
Jared K. Levy
Christopher J. Seusing (*pro hac vice admitted*)
Sean V. Patel (*pro hac vice admitted*)
400 Connell Drive, Suite 1100
Berkeley Heights, NJ  07922
(973) 265-9901
jlevy@wshblaw.com
csuesing@wshblaw.com
spatel@wshblaw.com

*Attorneys for Defendants*